THOMPSON, ADMINISTRATRIX, APPELLANT, *v.* MONTANA CENTRAL RAILWAY COMPANY, RESPONDENT.

[Submitted January 8, 1896.   Decided January 20, 1896.]

NEGLIGENCE—*Switchman—Contributory negligence.*—In an action against a railroad company for damages for the death of the deceased, who was foreman of a switching crew in the defendant's yard, a verdict for the defendant upon the question of the contributory negligence of the deceased is amply supported by evidence that the decedent was switching cars with a road engine, the use of which was more hazardous than the use of a yard engine equipped for that purpose; that the deceased, though he had full authority to do so, had not taken the precaution of placing a flat car in front of the road engine, which would have decreased the danger; that while in the act of uncoupling the engine from a box car in order to make a flying switch he stood in an unusual position, and when the engine drew away from the car fell to the track and was killed; that it was not only unnecessary to make flying switches or to uncouple while moving at that point, owing to the grade of the track, but the deceased had by special order been prohibited from so doing. (*Prosser* v. *Montana Central Ry. Co.*, ante, page 372, cited.)

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION for damages for death.   The cause was tried before HUNT J.   Defendant had judgment below.   Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff here, as administratrix and personal representative of John J. Thompson, deceased, brought this action, for the benefit of his heirs at law, to recover damages by reason of the death of deceased, alleged to have been caused by the negligence of the defendant.   The verdict of the jury was for the defendant.   Plaintiff appeals.

There was scarcely any substantial conflict in the testimony in this case.   There is ample evidence that the facts were about as follows:   Thompson, the deceased, was foreman of a switching crew at the Helena yard of the defendant railway company.   The duties of the switching crew were to move and arrange the cars in and about the yard.   For this purpose they used what is called a "yard engine," or "switch engine," which was handled by an engineer and fireman.   A switch engine has the pilot removed, and in place thereof a footboard, upon which switchmen stand and ride in the course of their duties.   The tank, instead of being square, is cut to a slant behind.   On the day of the accident the switch engine became disabled about 10 o'clock in the morning.   It was taken to the stable, and a road engine procured.   The road engine had no footboards, and had the tank of ordinary construction, and a regular pilot in front.   The crew worked with this engine until the latter part of the afternoon.   It was then their duty to move some cars onto what they called the "Northern Pacific Transfer."   That is to say, they were to take the cars to a switch, by means of which switch the cars could be set onto a track which led to the Northern Pacific Railroad tracks.   This transfer track between the tracks of the two companies had a considerable down grade from the Montana Central to the Northern Pacific.   It was also a down

grade on the Montana Central track as it approached the switch leading to the transfer. The switching crew attached some cars to the engine in front. This road engine was equipped with a pushbar or drawbar, which is attached to the upper end of the pilot, and, when not in use, lies upon the pilot, reaching to about the toe of the same. This pushbar was coupled to the drawhead of the box car. Thereupon the engine started backward, pulling the box cars after it. They proceeded toward the Northern Pacific transfer track. The intention, it appears, was to make a flying switch, and drop the box cars on the transfer track. A flying switch is made by uncoupling the engine from the cars before reaching the switch. The engine then increases speed until it passes the switch, and before the following cars reach the switch, the same is thrown by a switchman, and the cars drop into a track other than that upon which the engine is left. Some of the witnesses saw the engine and cars proceeding towards the switch in the manner prescribed, and at the rate of six or seven miles an hour. The deadwood of a freight car is a piece of heavy timbering projecting from the body of the car, about the level of the floor of the same, in order to prevent cars from striking each other if the drawheads break, or if, by any other accident, the cars come into close contact. The deceased was standing between the engine and the box car. He had his right foot upon the deadwood of the car, and his left foot upon the pushbar of the engine. The deadwood being higher than the place where the pushbar was fastened to the engine, his left foot was lower than his right. He was holding with one hand to a handrail about 14 inches above the deadwood, and trying to pull the pin with his other hand. He was observed in this position, and, just after passing out of sight of the witnesses, the car was uncoupled from the engine; the engine drew away; the plaintiff fell to the track, and was run over by the cars and killed. There was testimony that the position of the plaintiff was a very unusual one. There was also testimony that the deceased could have taken, and had the right to take a flat car, and put it in front of the engine, and use that

for switching purposes; that this would have obviated much of the danger of the road engine without footboards. It was also in evidence that it was not necessary to make a flying switch in order to drop the cars on the transfer track; that by stopping the engine and cars, and uncoupling at a standstill, and then drawing the engine away, the grade was sufficient to drop the cars onto the transfer by simply releasing the brakes. Thompson was foreman of the switching crew, and himself had the right to order the engineer to stop in order to make an uncoupling at a stand. He did not do so, but chose to make the uncoupling while moving at the rate of six or seven miles an hour. The rules of the company were introduced, showing that the men were prohibited from making flying switches. It also sufficiently appeared that deceased had knowledge of this rule, but there was also evidence that this rule was frequently disregarded. There was, however, other testimony that there was a special order, given by the proper authorities to the deceased, not to make flying switches at this particular point, or to uncouple while moving at this point. The reason for this order was that so great a momentum was acquired that it was sometimes difficult to stop the cars before they reached the Northern Pacific yards, and caused damage by collisions, and furthermore, that in the course of the cars towards the Northern Pacific yards they were obliged to cross a traveled street of the city of Helena.

On these facts and instructions of the court, the jury found for the defendant.

*Walsh & Newman,* for Appellant.

It is negligence to substitute a road engine for a switch engine. (*Smith* v. *Buffalo R. & P. Ry. Co.,* 25 N. Y. Sup. 538; *Missouri Pacific Ry. Co.* v. *McCally,* 21 Pac. 574.) When deceased had commenced his day's work and the company thereafter substituted the road engine for the switch engine, he was not obliged to immediately quit work and lose his position. He had a right to wait a reasonable time to con-

sider the circumstances of the case, and determine whether he would quit work or continue in the employment, and to see whether or not the defendant would continue to use the road engine for switching purposes. (*O'Rorke* v. *Union Pacific Ry. Co.*, 22 Fed. 189; Buswell on Personal Injury, § 199-211; *Thrussell* v. *Handyside*, 20 Q. B. D. 359; Woods' Railway Law, Vol. 3, § 371; Beach on Contributory Negligence, § 372; *Snow* v. *Housatonic Ry. Co.*, 8 Allen 441; *Soeder* v. *St. Louis I. M. & S. Ry. Co.*, 13 S. W. Rep. 714; *Patterson* v. *Connellsville Ry. Co.*, 76 Pa. St. 390-393; *Stoddard* v. *St. Louis Ry. Co.*, 65 Mo. 514; *Brazil Block Coal Co.* v. *Hoodlet*, 27 N. E. Rep. 744; Cooley on Torts, page 555; *Flynn* v. *Kansas City, St. Joe & C. B. Ry. Co.*, 78 Mo. 195; *Keegan* v. *Kavanaugh*, 66 Mo. 232; *Hawley* v. *Northern Central Railway Co.*, 82 N. Y. 731; *Greenleaf* v. *Illinois Central Ry. Co.*, 29 Ia. 14; *Rettig* v. *Fifth Avenue Transfer Co.*, 26 N. Y. Sup. 896; Thompson on Negligence, Vol. 2, page 1017; *Perry* v. *Ricketts*, 55 Ill. 234; *Indianapolis & St. Louis Ry. Co.* v. *Estes*, 96 Ill. 470; *Greene* v. *Minneapolis & St. Louis Ry. Co.*, 17 N. W. 379; *Missouri Pacific Ry. Co.* v. *McCally*, 21 Pac. 578; *Mobile & O. R. Co.* v. *George*, 10 So. 145.)

*H. G. McIntire*, for Respondent.

I.   It was not negligence to use the road engine under the circumstances stated.   The yard engine had become out of repair and a road engine had to be used or the defendant's business brought to a standstill.   The road engine being less convenient and more dangerous for switching purposes than a yard engine, greater care should have been exercised in its use. The simple precaution of a flat car could have been adopted, or the uncouplings could have been made when the train was at a standstill.   The deceased was familiar with any danger consequent upon the use of a road engine for switching; and under the decision of all the courts must be presumed to have assumed the risk attending such use. (*Stoeckman* v. *Terre Haute, etc., R. Co.*, 15 Mo. App. 503, 506, *et seq.*; *Gulf C.*

*& S. R. Co.* v. *Schwabbe,* 21 S. W. Rep. 706; *Southern P. R. Co.* v. *Seley,* 152 U. S. 145; *McGlynn* v. *Brody,* 31 Cal. 380; *Dillon* v. *Northern Pacific R. R. Co.,* 3 Dillon 319; *Lopez* v. *Central A. M. Co.;* 2 Pac. Rep. 748; *Kansas Pacific R. Co.* v. *Peevy,* 8 Pac. Rep. 780; *Hurst* v. *Burnside,* 8 Pac. Rep. 885; *Sanborn* v. *A. T. & S. F. R. Co.,* 10 Pac. Rep. 860; *Rush* v. *Missouri Pacific R. Co.,* 12 Pac. Rep. 582; *Burlington & C. R. Co.* v. *Liehe,* 29 Pac. Rep. 176; *Clark* v. *Missouri P. R. Co.,* 29 Pac. Rep. 1139; *Jennings* v. *Tacoma R. & M. Co.,* 34 Pac. Rep. 937; *Townsend* v. *Langles,* 41 Fed. Rep. 919; *Moulton* v. *Gage,* 138 Mass. 390; *Ladd* v. *N. B. R. Co.,* 119 Mass. 412; *Texas & Pacific R. Co.* v. *Rodgers,* 57 Fed. Rep. Ct. of App. 378; *Bogenschuetz* v. *Smith,* 1 S. W. Rep. 578; *Kelley* v. *Chicago, St. P., M. & O. R. Co.,* 29 N. W. 173; *Brieg* v. *Chicago & W. M. R. Co.,* 57 N. W. 118; *McAndrews* v. *Montana Union R. Co.,* 39 Pac. 85; *New York & R. Co.* v. *Lyons,* 119 Pa. St. 324, s. c. 13 Atl. Rep. 205; *Stevenson* v. *Duncan,* 73 Wis. 404, s. c. 41 N. W. Rep. 337; *Fowler* v. *Chicago, etc., R. Co.,* 61 Wis. 159, s. c. 21 N. W. 40; *Schroeder* v. *Mich. Car Co.,* 56 Mich. 132, s. c. 22 N. W. Rep. 220; 1 Lawson Rights and Remedies, page 533, § 302; page 554, § 311; 1 Estee, § 1840; Woods' Master and Servant, page 680; 2 Thompson on Negligence, pp. 1053-1054, § 48, note 4; Wharton on Negligence, § 214-220; Black Accident Cases, page 28, § 21; 3 Wood on Railroads, page 1745, *et seq.,* § 379.)

II.   It is contributory negligence, relieving an employer from liability, when an injury is the result of a violation on the part of an employee of the rules and orders which are given to him in the conduct of the business he is engaged in. (3 Wood on Railroads, page 1759, § 382; 1 Shearman and Red on Negligence, 4th Ed., § 207; Beach on Contributory Negligence, page 365; *Lockwood* v. *Chicago R. R. Co.,* 55 Wis. 50; *Pilkington* v. *Gulf, etc., R. R. Co.,* 7 S. W. Rep. 805; *B. & O. R. Co.* v. *Kean,* 5 Atl. Rep. 328.)   A servant must obey the rules prescribed by the master for the conduct of the business.   (Beach on Contributory Negligence, page 374; 1

Lawson Rights and Remedies, page 564, § 315; *Railroad* v. *Jones*, 95 U. S. 439; *Kansas & A. V. R. Co.* v. *Dye*, 70 Fed. 24.)

DE WITT, J.—We are of the opinion that the statement of this case about decides it.     It is conceded that the use of a road engine for switching purposes was more hazardous than the use of a yard engine specially equipped for that purpose. But deceased knew all about that.     He was thoroughly experienced in the business.     He, with his crew, obtained the road engine, and went to work with it, without the precaution of putting a flat car in front, which he might have done, and which was within the scope of his own authority to do without orders from any one, and which was a precaution against the danger of using a road engine.     The question of the deceased's contributory negligence was fairly presented to the jury.     It is contended by respondent that the contributory negligence of the deceased was so clearly established that the court should have taken the whole subject from the jury, and directed a nonsuit. We need not pass upon that question, as the verdict was for the defendant; but, the question of contributory negligence having been submitted to the jury, we are very clearly of the opinion that there was ample evidence to sustain the decision of this question of fact by the jury.     It could not possibly be held in this case that the defendant was clearly free from contributory negligence.     (*Prosser* v. *Montana Cent. Ry. Co.*, *ante*, 372.)

We do not attach great weight, in this case, to the evidence of a general rule of the company forbidding the making of a flying switch, for the reason that in this case there was a special order to the deceased not to make a fly at this particular point, and not to uncouple while in motion at this point. Very sufficient reasons were given for this order, as may be seen by referring to the statement of facts above.     Under all the facts of this case, it seems that the position of the deceased in making the uncoupling was an unusual and unnecessarily hazardous one. He could have stopped the locomotive and cars at the switch, as he was ordered to do, and have dropped the cars, by gravity,

onto the transfer track.   There can be no doubt in this case that evidence of contributory negligence was ample to go to the jury, and the jury having passed upon that proposition, with a sufficiency of evidence before them, their conclusions will not be disturbed in this court.

The appellant's counsel, in their brief, make some claim as to error in some of the instructions; but they do not pretend to point out in their brief wherein the error lies, and we have not been able to discover any.   It is our opinion that the case was fairly presented to the jury upon the facts elicited by the testimony. ᐧ The judgment and order denying a new trial are affirmed.

*Affirmed.*

PEMBERTON, C. J., concurs.

HUNT, J., having tried this case as district judge, does not participate in this decision.

